196 P.3d 879

**STATE of Arizona, Appellee,**

v.

**Juan BARRAGAN–SIERRA, Appellant.**

No. 1 CA–CR 07–0048.

Court of Appeals of Arizona,
Division 1, Department A.

July 17, 2008.

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Tennie B. Martin, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

WINTHROP, Judge.

¶ 1 Juan Barragan–Sierra ("Appellant") appeals from his conviction for one count of conspiracy to commit human smuggling, a class four felony, and the resulting sentence. Appellant argues that (1) the trial court abused its discretion in refusing to grant his motion for judgment of acquittal for failure to satisfy the *corpus delicti* rule, (2) the offense was not cognizable under Arizona law, and (3) the human smuggling statute as applied to him was preempted by federal law. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND [1]

¶ 2 On July 3, 2006, a grand jury issued an indictment, charging Appellant and three co-defendants with one count of conspiracy to commit smuggling:

JUAN BARRAGAN–CIERRA,[2] on or between the 20th day of June, 2006 and the 23rd day of June, 2006, with the intent to promote or aid the commission of an offense, to-wit: Human Smuggling, in violation of A.R.S. § 13–2319, agreed with one or more persons that at least one of them or another would engage in conduct constituting the offense of Human Smuggling, in violation of A.R.S. § 13–2319, and one or more persons, committed the following overt act(s): Each of the above named defendants was a passenger in a vehicle and present in Maricopa County, Arizona on June 23, 20[0]6, in violation of A.R.S. §§ 13–1003, 13–2319, 13–701, 13–702, 13–702.01, and 13–801.

(Footnote added.)

¶ 3 The following evidence was presented at trial: At approximately 5:38 a.m. on June 23, 2006, Maricopa County Sheriff's Office Deputies Sean Ross and Frank Poerio observed that the driver's side brake light was inoperative on a red Chevy truck traveling north on State Route 85. The deputies initiated a traffic stop by activating the emergency lights on their patrol car, and the truck pulled to the right-hand side of the road and stopped. The deputies exited their patrol car and approached the truck, but it sped away. The deputies reentered their patrol car and pursued the truck, which Deputy Ross estimated reached speeds in excess of one-hundred miles per hour. At one point, the truck swerved into the oncoming lane of traffic and traveled in that lane for approximately a quarter mile before swerving back into the northbound lane.

¶ 4 Ultimately, the truck slowed, pulled over to the side of State Route 85, and stopped. Deputy Ross noticed that, instead of the two people he had observed earlier, there were now five people visible in the truck's cab. The driver exited the truck, and Deputy Ross exited his patrol vehicle and shouted commands at the driver. The driver looked at Deputy Ross, then ran into a nearby cornfield thick with eight-foot tall corn stalks. Three of the passengers from the cab also ran into the cornfield. A fifth person remained in the cab, although he appeared to be trying to get out.

¶ 5 Two men, including Appellant, arose from under a piece of blue carpet in the bed of the truck and appeared ready to jump out and run, but the patrol car slipped out of gear and bumped the truck, causing the men to fall. Three other men were also discovered concealed under the blue carpet in the bed of the truck.[3]

¶ 6 Deputy Ross shouted commands in both English and Spanish for the persons who had fled into the cornfield to stop, and he chased them, primarily focusing on catching the driver. After realizing that he was unable to catch the driver because visibility in the cornfield was virtually "nonexistent," he returned to assist Deputy Poerio. None of the persons who fled into the cornfield

---

1. We view the facts in the light most favorable to sustaining the verdict, and we resolve all reasonable inferences against Appellant. *See State v. Greene*, 192 Ariz. 431, 436, ¶ 12, 967 P.2d 106, 111 (1998).

2. During trial, the court granted the State's unopposed motion to amend the indictment to correct the spelling of Appellant's name.

3. The record contains some discrepancy as to the number of other men discovered under the blue carpet.

were caught, despite the establishment of a perimeter around the field and a more thorough search aided by local police.

¶ 7 Deputy Ross identified Appellant as one of the persons who had been hiding under the blue carpet in the truck's bed. Appellant's clothing was disheveled and appeared soiled, and he looked tired and worn out. Based on Appellant's appearance and the fact that he was found concealed under the carpet in the bed of the truck, Deputy Ross testified, "I believe that he was attempting to be smuggled into the country."[4] Appellant admitted at the scene that he was entering Arizona from Mexico and was in this country illegally.

¶ 8 Appellant and the other men in the truck were detained and transported to the Avondale police substation, where a detention officer fluent in Spanish read Appellant his *Miranda*[5] rights. Appellant stated that he understood his rights, and he agreed to speak to the officer. Appellant told the detention officer that he arranged to come to the United States illegally through a person he approached on the streets of San Luis, a town in Mexico south of Yuma. The person he approached took him to a hotel in San Luis and rented him a room. At the hotel, Appellant agreed to pay $2,000 when he reached his destination of Everson, Washington. Eventually, the person at the hotel, whose name Appellant did not know, told Appellant to follow him, and then told Appellant to start running. After Appellant ran across the border, another man appeared and walked Appellant through the desert for about ten minutes before a gray van picked him up. After about thirty minutes, somebody told him to exit the van and run through some shrubs, where there would be another vehicle. The red truck then picked him up. Appellant said nine or ten other people, whom he also believed to be in the United States illegally, were with him in the red truck. When asked what might happen

if he did not pay the $2,000 fee, Appellant said, "Well, they say they beat them." Documents from immigration authorities showed that Appellant had previously been deported from this country after entering illegally, and he was not legally in the United States on this occasion.

¶ 9 The jury convicted Appellant of the charged crime. The court suspended sentencing and imposed a two-year term of unsupervised probation, with the condition that Appellant not remain in or return to the United States illegally.

¶ 10 We have jurisdiction to decide Appellant's timely appeal. *See* Ariz. Const. art. 6, § 9; Ariz.Rev.Stat. ("A.R.S.") §§ 12–120.21(A)(1) (2003), 13–4031 (2001), –4033(A) (2001).

## ANALYSIS

### I. Application of the Corpus Delicti Rule

¶ 11 Appellant argues that the trial court abused its discretion in denying his motion for judgment of acquittal, *see* Ariz. R.Crim. P. 20, on the ground the State failed to offer evidence independent of his incriminating statements that he arranged to pay someone $2,000 to transport him illegally to the United States-thereby violating the *corpus delicti* rule. Appellant specifically argues that the State failed to offer any evidence independent of his statements to show that he made an agreement, or that he agreed to pay money, to have someone smuggle him into the United States. We review for an abuse of discretion a ruling on the sufficiency of the evidence to establish *corpus delicti*. *State v. Morris*, 215 Ariz. 324, 333, ¶ 33, 160 P.3d 203, 212 (2007), *cert. denied*, —— U.S. ——, 128 S.Ct. 887, 169 L.Ed.2d 742 (2008).

¶ 12 "The corpus delicti doctrine ensures that a defendant's conviction is not based upon an uncorroborated confession or

---

4. The deputies did not find substantial amounts of cash on Appellant, which Deputy Ross said was consistent with his experience in other cases, in which neither the smuggler nor the person smuggled carried cash, because payment was made only at the final destination. Also, although deputies were able to determine the

name of the registered owner of the truck, which had California license plates, they were unable to locate the owner.

5. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

incriminating statement." *Id.* at ¶ 34 (citations omitted). "The purpose of the rule is 'to prevent a conviction based solely on an individual's uncorroborated confession, the concern being that such a confession could be false and the conviction thereby lack fundamental fairness.'" *State v. Nieves,* 207 Ariz. 438, 440, ¶ 7, 87 P.3d 851, 853 (App.2004) (citations omitted). The *corpus delicti* rule requires that, as a condition of the admissibility of a defendant's incriminating statements, the State present evidence independent of the statements sufficient to raise a reasonable inference that the victim's alleged injury was caused by criminal conduct rather than by accident. *See Morris,* 215 Ariz. at 333, ¶ 34, 160 P.3d at 212 (citations omitted). The evidence supporting the inference may be circumstantial, *State v. Hall,* 204 Ariz. 442, 453, ¶ 43, 65 P.3d 90, 101 (2003), and the evidence offered to support the inference need not even be admissible at trial. *See State v. Gerlaugh,* 134 Ariz. 164, 170, 654 P.2d 800, 806 (1982). The evidence, however, must support "a reasonable inference that the crime charged was actually committed by some person." *State v. Hernandez,* 83 Ariz. 279, 282, 320 P.2d 467, 469 (1958); *accord State v. Flores,* 202 Ariz. 221, 224–25, ¶¶ 17–19, 42 P.3d 1186, 1189–90 (App.2002) (holding that the State's evidence that the defendant possessed narcotic drugs was insufficient to raise a reasonable inference that the charged crimes—possession for sale and transportation for sale—had been committed).

¶ 13 The background on this issue is as follows: Before trial, in a motion to suppress Appellant's statements, and at the close of the State's case, in the motion for judgment of acquittal, Appellant argued that the State failed to offer evidence, independent of his incriminating statements, that he had engaged in a conspiracy to commit human smuggling for profit. The court denied the pretrial motion to suppress, allowing the State to go forward and attempt to meet its burden at trial, reasoning that, even without expert testimony, "[T]he picture that's going to be drawn by the evidence that everybody agrees is going to be presented is one in which just about everybody in this country, if they were to look at that picture, would say, 'Oh, there's somebody smuggling illegal aliens.'" At the close of the State's case, the court, noting only that substantial evidence had been presented, also denied Appellant's motion for judgment of acquittal. Before sentencing, the court denied Appellant's motion for reconsideration of the motion for judgment of acquittal.

¶ 14 We find no abuse of discretion in the trial court's application of the *corpus delicti* rule to the evidence in this case. The State charged Appellant with conspiracy to violate Arizona's human smuggling statute by agreeing "with one or more persons that at least one of them or another would engage in conduct constituting the offense of Human Smuggling," and by committing the overt act of being "a passenger in a vehicle and physically present in Maricopa County, Arizona" on June 23, 2006. A defendant commits conspiracy to commit human smuggling if (1) with the intent to promote or aid human smuggling; (2) he agrees with one or more persons that at least one of them or another person will; (3) intentionally transport or procure the transport of a person who is not a United States citizen, permanent resident alien, or otherwise lawfully in Arizona; (4) for profit or commercial purpose; (5) while knowing or having reason to know that the person being transported is not a United States citizen, permanent resident alien, or otherwise lawfully in Arizona; and (6) one of the parties commits an overt act in furtherance of the offense. *See* A.R.S. §§ 13–1003(A) (2001), –2319(A), (D)(2) (Supp.2008).[6]

¶ 15 In this instance, we, like the trial court, have no difficulty concluding that the circumstances of Appellant's capture give rise to a reasonable inference, independent of his incriminating statements, that Appellant made an agreement to pay money to another person to be smuggled into the

---

6. We cite the current version of the applicable statute because no revisions material to our analysis have since occurred. At the time of this offense, subsection (C) of § 13–2319 defined the term "smuggling of human beings." The definition was later moved to subsection (D)(2), but not otherwise substantially changed. *See* A.R.S. § 13–2319 (Supp.2005), *amended by* 2006 Ariz. Sess. Laws, ch. 380, § 1 (2nd Reg.Sess.).

United States from Mexico. Appellant was found with four other persons hiding under a piece of carpet in the bed of a truck that fled law enforcement officers at speeds exceeding one-hundred miles per hour. Appellant appeared tired and his clothes were soiled, consistent with having been smuggled in from Mexico. Four of the other people in the truck, including the driver, fled into a nearby cornfield as soon as the truck stopped, ignoring shouted commands in Spanish and English by law enforcement officers. Documents certified by a federal agency confirmed that Appellant was not in this country legally. Under these circumstances, Arizona jurors would not need an expert to conclude that a group of illegal aliens was being transported into the United States as part of a for-profit or commercial arrangement. Given the independent and corroborative evidence and the reasonable inferences to be drawn therefrom, it is reasonable under the circumstances to infer that Appellant had agreed to pay someone to transport him illegally into this country. This is all that is required for satisfaction of the *corpus delicti* rule. *See Morris,* 215 Ariz. at 333, ¶¶ 34–35, 160 P.3d at 212. We thus find no abuse of discretion in the trial court's denial of Appellant's motion for judgment of acquittal for failure to establish *corpus delicti* independent of Appellant's admissions. Because we find no abuse of discretion in the court's application of the rule, we need not reach the issues raised by the State with respect to the rule's continued validity and constitutionality under Arizona law.

## II. Application of the Human Smuggling Statute to Appellant

¶ 16 Appellant next argues that the trial court erred by not *sua sponte* dismissing the prosecution because, under the rules of statutory construction and consistent with public policy, the human smuggling statute cannot be interpreted to allow a conviction of the person smuggled for conspiracy to smuggle himself. We review *de novo* purely legal issues of statutory construction. *Mejak v. Granville,* 212 Ariz. 555, 556, ¶ 7, 136 P.3d 874, 875 (2006). Because Appellant failed to raise this objection below, however, we re-

view only for fundamental error. *See State v. Henderson,* 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005). Appellant thus bears the burden of establishing error, that the error was fundamental, and that the error caused him prejudice. *See id.* at 567–69, ¶¶ 19–26, 115 P.3d at 607–09. We find no error.

### A. Legislative Intent

¶ 17 Appellant argues that the Arizona State Legislature did not intend to allow smuggled persons to be held liable for conspiracy to commit human smuggling, as evidenced by the lack of any language in the statute or any legislative history suggesting the statute was intended to reach the person smuggled. In interpreting statutes, we make every effort to give effect to the intent of the legislature. *Mejak,* 212 Ariz. at 557, ¶ 8, 136 P.3d at 876. We consider the statutory language the best indicator of that intent, and we need go no further to ascertain the intent if the language of the statute is clear and unambiguous. *Id.* We employ a common sense approach, reading the statute in terms of its stated purpose and the system of related statutes of which it forms a part, while taking care to avoid absurd results. *See State v. Rodriguez,* 205 Ariz. 392, 396, ¶ 11, 71 P.3d 919, 923 (App.2003); *State v. Affordable Bail Bonds,* 198 Ariz. 34, 37, ¶ 13, 6 P.3d 339, 342 (App.2000).

¶ 18 The language of the conspiracy and human smuggling statutes in effect at the time of Appellant's offense is clear and unambiguous, and those statutes, read together, plainly allow the person smuggled to be convicted of conspiracy to commit human smuggling. *See* A.R.S. §§ 13–1003(A), –2319(A), (D)(2). The two statutes, read together, demonstrate the legislature's intent to prohibit (1) conspiring with others (2) to transport "for profit or commercial purpose" persons who are not United States citizens or otherwise lawfully in Arizona. Arizona Revised Statutes § 13–1006(B) (2001) expressly provides that a person may commit conspiracy to commit an offense—in this case, human smuggling—even if he cannot be convicted of the offense itself. Accordingly, as we have

recognized *supra*, by the plain terms of the statutes a person commits conspiracy to commit human smuggling if (1) with the intent to promote or aid human smuggling; (2) he agrees with one or more persons that at least one of them or another person will; (3) intentionally transport or procure the transport of a person who is not a United States citizen, permanent resident alien, or otherwise lawfully in Arizona; (4) for profit or commercial purpose; (5) while knowing or having reason to know that the person being transported is not a United States citizen, permanent resident alien, or otherwise lawfully in Arizona; and (6) one of the parties commits an overt act in furtherance of the offense. *See* A.R.S. §§ 13–1003(A), –2319(A), (D)(2). When Appellant agreed to be transported illegally into the United States from San Luis, Mexico, for a $2,000 fee, followed a person across the border through the desert on foot, and hid in a van and a truck as the group traveled north through Maricopa County, where he was stopped and arrested, he met all of the elements of conspiracy to commit human smuggling. Nothing in the language of the statutes suggests that the legislature did *not* intend the statutes to apply as written.

¶ 19 Further, we are not persuaded by Appellant's argument that statements by Representative Paton, sponsor of the 2005 legislation adopted in § 13–2319, evidenced an intent on the part of the legislature to criminalize only the actions of the coyotes, who profit from the smuggling, and not the person smuggled. In fact, at a February 10, 2005 meeting of the House Committee on the Judiciary, Representative Paton also decried the "culture of lawlessness" that had grown up around the practice of human smuggling, indicating a concern with the practice's larger impact on society. *See* H.R. 2539, 47th Leg., 1st Reg. Sess. (Ariz.2007) (statement of Rep. Paton, Member, House Comm. on the Judiciary, Feb. 10, 2005 minutes, at 3). Moreover, even if Representative Paton did consider the person smuggled a victim and not subject to punishment under the human smuggling statute, as Appellant argues, this does not mean that either Representative Paton or the legislature intended to prevent the person smuggled from being punished for fueling the practice by paying to be smuggled, and thus engaging in a conspiracy to commit human smuggling. We are not persuaded that Representative Paton's comments signal an intent to exempt this category of offense from application of the conspiracy statute.

¶ 20 Nor are we persuaded by Appellant's argument that the legislature did not intend to make the person smuggled criminally liable as a conspirator because the legislature was presumed to have been aware that no reported decision indicates that the federal government has ever prosecuted the person smuggled for conspiracy under its analogous statute. Representative Paton's remarks suggest that Arizona's human smuggling bill was prompted by a frustration with federal authorities, specifically, the absence of "a zealous effort on the part of the U.S. Attorney's Office to prosecute illegal activity along the border." *See id.* at 4. Under these circumstances, we decline to presume the legislature intended to interpret its human smuggling statute consistently with the way in which Appellant argues the federal authorities interpret the federal statutes governing human smuggling.

### B. Subsequent Statutory History

¶ 21 Moreover, to the extent that the legislative history needs to be consulted, we are persuaded by the subsequent history of Arizona's human smuggling statute that the legislature did *not* intend to exempt the person smuggled from prosecution for conspiracy to smuggle himself. "It is an accepted rule of statutory construction that when 'determining the intent of the legislature, the court may consider both prior and subsequent statutes *in pari materia.*'" *State v. Sweet*, 143 Ariz. 266, 270, 693 P.2d 921, 925 (1985) (citations omitted). In considering such statutes, "[a]n amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act." *City of Mesa v. Killingsworth*, 96 Ariz. 290, 297, 394 P.2d 410, 414 (1964) (citation omitted). In this case, in 2006, the legislature amended the human smuggling statute to add subsection (C) as follows:

**C.** Notwithstanding subsection B, a violation of this section is a class 2 felony if the human being smuggled is under eighteen years of age and not accompanied by a family member over the age of eighteen. Chapter 10 of this title [§§ 13–1001 to – 1006] does not apply to a violation of this subsection.

A.R.S. § 13–2319(C) (added by 2006 Ariz. Sess. Laws, ch. 380, § 1) (footnote omitted). The legislature thus amended the human smuggling statute in 2006 to increase the penalty for smuggling a person under the age of eighteen unaccompanied by a family member, but specifically exempted this subsection from application of the "preparatory offenses," including the offense of conspiracy. *See id.*

¶ 22 The legislature did not, however, at the same time amend subsection (A), the general prohibition against smuggling of humans, to add the same caveat, i.e., that preparatory offenses, including conspiracy, would not apply. *Compare* A.R.S. § 13–2319(A) *with* (C). By specifying that the offense of conspiracy and other preparatory offenses would *not* apply to a violation of subsection (C), the smuggling of humans under the age of eighteen, but not including a similar caveat in subsection (A), the general prohibition against human smuggling, the legislature clearly intended that the offense of conspiracy could be applied to the smuggling of humans over the age of eighteen, as prohibited in subsection (A). Moreover, in 2007, two bills introduced in the Arizona House of Representatives proposing to eliminate the application of conspiracy and other preparatory offenses to the person being smuggled failed when they were held in committees. *See* H.R. 2270 and 2271, 48th Leg., 1st Reg. Sess. (Ariz.2007), *available at www. azleg.gov.* Based on this subsequent legislative history, it appears that the legislature, in adopting the original § 13–2319, did not intend to exempt the person smuggled from being prosecuted as a conspirator. *See Killingsworth,* 96 Ariz. at 297, 394 P.2d at 414.

*C. Application of Wharton's Rule*

■ ¶ 23 Appellant also argues that the conspiracy charge merges into the substan-tive offense, and cannot be separately charged, by application of the rule outlined in *State v. Chitwood,* 73 Ariz. 161, 239 P.2d 353 (1951),[7] which states "that where the agreement is to commit an offense which can only be committed by the concerted action of the two persons to the agreement, such agreement does not amount to a conspiracy." *Id.* at 166, 239 P.2d at 356 (declining to apply the rule to bar a prosecution for conspiracy to operate a gambling casino for third persons—the public). This rule, sometimes referred to as Wharton's Rule, is "a doctrine of criminal law enunciating an exception to the general principle that a conspiracy and the substantive offense that is its immediate end are discrete crimes for which separate sanctions may be imposed." *Iannelli v. United States,* 420 U.S. 770, 771, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). The rule "does not rest on principles of double jeopardy. Instead, it has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary." *Id.* at 782, 95 S.Ct. 1284 (citations & footnote omitted); *see also id.* at 791, 95 S.Ct. 1284 (holding that the legislative intent expressed in the history and structure of the act prohibiting illegal gambling manifested a clear intent to punish conspiracy as a distinct offense, outweighing any presumption of merger).

■ ¶ 24 Wharton's Rule does not apply to Arizona's human smuggling law. First, Wharton's Rule is a judicial presumption to be applied only in the absence of legislative intent to the contrary, *id.* at 782, 95 S.Ct. 1284, and the legislature, as outlined *supra,* has indicated that conspiracy may be charged as a crime distinct from human smuggling, except with regard to persons under the age of eighteen unaccompanied by a family member. Second, the rule is a rule of statutory construction that traditionally has been applied only to offenses involving two people, in which the agreement to engage in conduct is congruent with the conduct itself:

The classic Wharton's Rules offenses—adultery, incest, bigamy, dueling—are

---

7. *Opinion modified on other grounds upon rehear-* *ing,* 73 Ariz. 314, 240 P.2d 1202 (1952).

crimes that are characterized by the general congruence of the agreement and the completed substantive offense. The parties to the agreement are the only persons who participate in commission of the substantive offense, and the immediate consequences of the crime rest on the parties themselves rather than on society at large. Finally, the agreement that attends the substantive offense does not appear likely to pose the distinct kinds of threats to society that the law of conspiracy seeks to avert. It cannot, for example, readily be assumed that an agreement to commit an offense of this nature will produce agreements to engage in a more general pattern of criminal conduct.

*Id.* at 782–84, 95 S.Ct. 1284 (citations & footnotes omitted); *cf. United States v. Holte,* 236 U.S. 140, 145, 35 S.Ct. 271, 59 L.Ed. 504 (1915) (concluding that a woman could be prosecuted for conspiring to have herself transported across state lines for the purpose of prostitution, on the ground that her consent was not required to commit the substantive offense).

¶ 25 We decline to extend the application of Wharton's Rule to offenses such as the one at issue here, in which the parties to the initial agreement are *not* the only persons who participate in commission of the substantive offense, the immediate consequences of the crime rest not just on the parties to the crime, but on society at large, and the conspiracy itself makes it more likely that crimes unrelated to the original purpose will be committed. *See Iannelli,* 420 U.S. at 782–83 & n. 15, 95 S.Ct. 1284; *Chitwood,* 73 Ariz. at 166, 239 P.2d at 356. Appellant was charged with conspiracy to commit human smuggling by agreeing "with one or more persons that at least one of them or another would engage in conduct constituting the offense of Human Smuggling." By Appellant's admissions, he made an agreement with a person in San Luis, Mexico, to pay an unknown person in Everson, Washington, for being illegally transported into the United States. At least three other persons, none of whom Appellant knew, helped transport him before he was stopped and detained; one by guiding Appellant on foot through the desert after he crossed the border, another by driving a gray van that transported him, and a third by driving the red truck in which Appellant was found. The truck drove at speeds exceeding one hundred miles per hour, and drove briefly in the oncoming lane of traffic, in an attempt to evade law enforcement. The large number of conspirators and co-participants required to effect human smuggling thus removes that offense from the application of Wharton's Rule, even if the legislature had not clearly indicated when it amended the statute in 2006 that it intended to punish conspiracy as an offense distinct from human smuggling with one exception.

¶ 26 Appellant's reliance on *State v. Cota,* 191 Ariz. 380, 956 P.2d 507 (1998), also is misplaced. Our supreme court held in *Cota* that a purchaser of marijuana cannot be held liable either as a principal or as an accomplice to its unlawful transfer to himself. *See id.* at 383, ¶ 13, 956 P.2d at 510. In reaching this holding, the court relied on the plain language of the statute prohibiting transfer, which defines the term "transfer" in such a manner that it cannot apply to the recipient; the legislature's distinction between the statutory offenses of "transfer" and "possession," with a lesser penalty for the latter offense; and the principles of accomplice liability, which require that the principle and the accomplice "stand in the same relation to the crime . . . , approach it from the same angle, [and] touch it at the same point." *See id.* at 381–83, ¶¶ 6–10, 956 P.2d at 508–10 (citations omitted).

¶ 27 The statutory scheme and theory of liability in this case distinguish it from those supporting the holding in *Cota.* First, the language of the conspiracy and human smuggling statutes can on their face, as outlined *supra,* be read together to allow prosecution for conspiracy to smuggle oneself. Second, the legislature has not identified a separate offense, with a lesser penalty, for the person who is being smuggled, and thus, unlike *Cota,* has not indicated that it would treat a person who agreed to be smuggled any differently from the person who agreed to do the smuggling. Third, the principles of conspiracy liability, unlike those of accomplice liability, allow a conviction for conspiracy to commit a particular offense even if "by defi-

nition of the offense" the person is "legally incapable in an individual capacity of committing" that particular offense. *See* A.R.S. § 13–1006(B). These underlying principles distinguish this case from *Cota.*

¶ 28 Appellant's related argument that allowing the person smuggled to be separately charged with conspiracy violates public policy by treating him the same as the smuggler, but differently from others similarly situated, is one better directed at the legislature, not this court. *See State v. Wagstaff,* 164 Ariz. 485, 490, 794 P.2d 118, 123 (1990) ("Defining crimes and fixing penalties are legislative, not judicial, functions."); *see also* A.R.S. § 13–1003(D) (stating that, aside from conspiracy to commit a class one felony, "conspiracy is an offense of the same class as the most serious offense which is the object of or result of the conspiracy").

### III. Application of Federal Preemption to the Statute

■ ¶ 29 Appellant finally argues that federal immigration law preempts the State's attempt to prosecute him for conspiring to smuggle himself under Arizona's human smuggling act. Because he failed to raise this objection below, we again review only for fundamental error, in which Appellant bears the burden of establishing that error occurred, it was fundamental, and it resulted in prejudice. *See Henderson,* 210 Ariz. at 567–69, ¶¶ 19–26, 115 P.3d at 607–09. Additionally, we review *de novo* the legal issue whether federal law has preempted state law. *See E. Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n,* 206 Ariz. 399, 406, ¶ 19, 79 P.3d 86, 93 (App.2003). "The party claiming preemption 'bears the burden of demonstrating that federal law preempts state law.' " *Id.* at 405, ¶ 18, 79 P.3d at 92 (citations omitted). Appellant has failed to meet his burden.

■ ¶ 30 The Tenth Amendment to the United States Constitution provides that all "powers not delegated to the United States by the Constitution" are reserved to the states. U.S. Const. amend. X. "It is fundamental in our federal structure that States have vast residual powers. Those powers, unless constrained or displaced by the existence of federal authority or by proper

federal enactments, are often exercised in concurrence with those of the National Government." *United States v. Locke,* 529 U.S. 89, 109, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000) (citing *McCulloch v. Maryland,* 4 Wheat. 316, 17 U.S. 316, 4 L.Ed. 579 (1819)). Included among those residual powers reserved to the states is the police power: "[T]he States under our federal system have the principal responsibility for defining and prosecuting crimes." *Abbate v. United States,* 359 U.S. 187, 195, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) (citations omitted). Thus, states have the power to prosecute crimes based on acts that might also violate federal law, *see id.* at 195, 79 S.Ct. 666, unless preempted by the Supremacy Clause in Article VI, Clause 2, of the United States Constitution.

■ ¶ 31 The power to regulate immigration is exclusively a federal power. *DeCanas v. Bica,* 424 U.S. 351, 354, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976); *see also* U.S. Const. art. I, § 8, cl. 4 ("The Congress shall have Power . . . to establish an uniform Rule of Naturalization. . . ."). "But the Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power, whether latent or exercised." *DeCanas,* 424 U.S. at 355, 96 S.Ct. 933. In *DeCanas,* the Supreme Court outlined three ways in which state statutes related to immigration may be preempted: (1) when the state statute actually regulates immigration, *id.* at 354–55, 96 S.Ct. 933; (2) if it was "the clear and manifest purpose of Congress" "to preclude even harmonious state regulation touching on aliens in general," *id.* at 356–58, 96 S.Ct. 933 (citations omitted); and (3) if the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 363, 96 S.Ct. 933 (citations omitted).

■ ¶ 32 Arizona's human smuggling statute is not preempted under the first *DeCanas* test because it does not regulate immigration. *See id.* at 354–55, 96 S.Ct. 933. Immigration regulations determine "who should or should not be admitted into the country, and the conditions under which a

legal entrant may remain." *Id.* at 355, 96 S.Ct. 933. Arizona's human smuggling statute does not make such determinations. Further, the mere "fact that aliens are the subject of a state statute does not render it a regulation of immigration." *Id.* In this case, Arizona's human smuggling statute simply prohibits the knowing transportation of illegal aliens for profit or commercial purpose, requiring as an element of the offense that the persons transported be illegal aliens. The statute does not, however, determine the legality of a person's presence in the United States. It thus does not constitute a state regulation of immigration and is not preempted on this ground. *See id.*

¶ 33 Nor does Appellant persuade us that Arizona's human smuggling act is preempted because Congress has made "clear and manifest" its purpose to prevent the states from adopting even harmonious regulations prohibiting the smuggling of illegal aliens. *See id.* at 356–58, 96 S.Ct. 933. In DeCanas, the Supreme Court found no "specific indication in either the wording or the legislative history of the INA [Immigration and Naturalization Act] that Congress intended to preclude even harmonious state regulation touching on aliens in general." *Id.* at 358, 96 S.Ct. 933. Further, Appellant has not pointed to any specific indication in the INA or its history that Congress intended to preclude harmonious state regulation touching on the smuggling of illegal aliens in particular. *See id.* Appellant's reference to the limits on the role of states in enforcement of the federal immigration law has no applicability to this law, which is a state law designed to punish human smuggling for profit. Appellant has failed to meet his burden to show preemption under this test. *See E. Vanguard Forex,* 206 Ariz. at 405, ¶ 18, 79 P.3d at 92.

¶ 34 Finally, Appellant has failed to persuade us that Arizona's human smuggling law is preempted because the law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the INA." *DeCanas,* 424 U.S. at 363, 96 S.Ct. 933 (citations omitted). To the extent that § 13–2319 affects immigration policy, if at all, we note that "the States do have some authority to act with

respect to illegal aliens, at least where such action mirrors federal objectives and furthers a legitimate state goal." *Plyler v. Doe,* 457 U.S. 202, 225, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). We have no difficulty finding that Arizona's human smuggling law furthers, by a classic exercise of its police power, the legitimate state interest of attempting to curb the "culture of lawlessness" that has arisen around this activity. Nor do we find that § 13–2319 conflicts with federal law, or "stands as an obstacle" to the accomplishment of Congress's purposes and objectives. *See DeCanas,* 424 U.S. at 363, 96 S.Ct. 933. Rather, to a large extent, Arizona's objectives mirror federal objectives. Congress has enacted a similar provision that provides in relevant part:

Any person who ... knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law ... shall be punished as provided in subparagraph (B).

8 U.S.C. § 1324(a)(1)(A)(ii) (West 2008) (effective Nov. 10, 2005). The same act may offend the laws of both the state and the federal government and may be prosecuted and punished by each. *Abbate,* 359 U.S. at 194, 79 S.Ct. 666. Thus, under its human smuggling law, Arizona may prosecute and punish a person who knowingly transports illegal aliens within its borders for profit or commercial purpose, just as, under federal law, the federal government may prosecute and punish a person who knowingly or recklessly transports such illegal aliens within the United States. Arizona's enforcement of its human smuggling law is compatible with the federal enforcement of its counterpart, serving the same purposes. Although the federal government may not have used its resources to prosecute a person for the crime of conspiracy to transport himself under its conspiracy statutes, as Appellant argues, Appellant fails to persuade us that this application of Arizona's human smuggling statute conflicts with, or acts as an obstacle to effecting,

the purposes and objectives of federal immigration law.

¶ 35 Appellant finally argues that the statute is unconstitutionally vague because it does not "incorporate federal immigration standards" or establish standards for determining whether the smuggled persons are United States citizens, permanent resident aliens, or "otherwise lawfully in this state." *See* A.R.S. § 13–2319. Appellant has no standing to make this argument because, by his own admission, he was not lawfully in the United States, and thus he falls squarely within the plain language of the statute. *See State v. Kessler,* 199 Ariz. 83, 87, ¶ 17, 13 P.3d 1200, 1204 (App.2000) ("Traditionally, one who asserts a claim of statutory overbreadth or vagueness does not have standing if his conduct falls squarely within the constitutionally legitimate prohibitions of the regulation at issue."). Moreover, to the extent that Appellant is arguing that the law is unconstitutionally vague and may conflict with federal immigration law because it prohibits the transport for profit of someone who is not "otherwise lawfully in this state," without defining that term, we construe this language as simply a reference to the federal immigration status of the detainee. *See State v. Cromwell,* 211 Ariz. 181, 188, ¶ 38, 119 P.3d 448, 455 (2005) (citing the principle that, whenever possible, we construe statutes to uphold their constitutionality).

¶ 36 For all of these reasons, we find that Appellant has failed to meet his burden to establish that federal law preempts Arizona's human smuggling statute.

## CONCLUSION

¶ 37 For the foregoing reasons, we affirm Appellant's conviction and sentence.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and G. MURRAY SNOW, Judge.