NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

NORA COLEEN MOWERS, *Appellant.*

No. 1 CA-CR 19-0431
FILED 11-17-2020

Appeal from the Superior Court in Maricopa County
No. CR2015-125783-001
The Honorable Julie A. LaFave, Judge *Pro Tempore*

**VACATED AND REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Joel M. Glynn
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the Court, in which Presiding
Judge Jennifer M. Perkins and Judge Michael J. Brown joined.

**G A S S**, Judge:

¶1        Nora Coleen Mowers appeals her convictions for aggravated driving under the influence (DUI). Mowers argues the convictions should be vacated because the superior court improperly allowed the results of a breathalyzer test into evidence. Because the superior court abused its discretion when it allowed the test results into evidence, and the State has not met its burden of showing the error was harmless, we vacate both convictions and remand this matter for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

¶2        The State charged Mowers with driving, without a valid driver's license, while under the influence of intoxicating liquor or drugs (impaired to the slightest degree) (count 1) and driving with a blood-alcohol concentration (BAC) of 0.08 or more (count 2). *See* A.R.S. §§ 28-1381 to -1383. The charges stemmed from a two-vehicle collision in Phoenix.

¶3        When Officer Timothy Mazich arrived at the scene, he found "two vehicles in the roadway that had obviously been involved in a collision." A man, later identified as B.S., "was standing right at the accident scene in the roadway by the two vehicles." After asking B.S. who was driving the vehicles, Mazich spoke to Mowers, who was standing near a retaining wall on the side of the road. Mowers said she was driving out of "the Walmart parking lot to make a left turn [when] she was struck by a vehicle that was coming northbound." Mazich also spoke with D.M., the second driver. The physical evidence and D.M.'s explanation of the accident corroborated Mowers's version of the events.

¶4        Mazich then asked Mowers for her driver's license. Mowers initially said her license was in the vehicle and provided Mazich with her name and date of birth. Mazich performed a record check but could not locate a valid driver's license matching the information Mowers provided. After several additional attempts to verify the information Mowers provided, Mazich asked her "to be honest" with him. Mowers then said her driver's license "had been revoked."

¶5        As he approached Mowers to place her under arrest, Mazich "smelled an odor of alcohol coming from her breath." Mazich asked if she had been drinking and she admitted to drinking four beers. Mazich then called Officer Florin Bohatir to assist with a DUI investigation. Bohatir also noted the smell of alcohol coming from Mowers and asked if she would consent to a field sobriety test. Though Mowers agreed, she appeared to

have injured her ankle in the collision, making her a "medical rule-out." Bohatir, therefore, performed a horizontal gaze nystagmus (HGN) test instead of the standard field sobriety tests. HGN is a neurological dysfunction causing involuntary twitching of the eye and can be caused by alcohol consumption. Mowers demonstrated six cues during the test, indicating a BAC greater than the legal limit. Bohatir then arrested Mowers and transported her to a police substation for DUI processing.

¶6        At the substation, Mowers consented to an alcohol-breath test conducted by Officer Michael Chase. Chase began by asking Mowers a few of biographical questions and explaining her *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Throughout his interaction with Mowers, Chase noted her "eyes were watery and bloodshot" and she smelled of alcohol. Chase performed two statutorily-required, alcohol-breath tests on Mowers using an Intoxilyzer 8000. *See* A.R.S. § 28-1323.A.3. The first test showed Mowers's BAC was 0.221, and the second showed a result of 0.215.

¶7        On the first day of trial, the State called Chase to testify about Mowers's breath-test results. Chase described his training and experience, including his certification to operate the Intoxilyzer 8000. He explained how "the machine checks itself" with a known substance and does "a couple air blanks to make sure everything's flushed out" before and after each subject test "[t]o make sure it's a fair and accurate test." When the test is complete, the Intoxilyzer 8000 prints two copies of a "ticker tape" showing the results of both the self-check and subject tests along with a notification of whether the overall test was successfully completed. Chase then told the jury the procedure he followed when administering the test to Mowers, including the use of an approved operational checklist. Chase never said whether the machine displayed the self-check or the successful completion message.

¶8        To lay foundation for Mowers's test results, the State showed Chase two exhibits. The first (Exhibit 4) was a photocopy of the Intoxilyzer 8000 "ticker tape" printout from Mowers's tests. Because Exhibit 4 was largely illegible, the State next showed Chase Exhibit 5, a later "reprint" showing the results of Mowers's breath test and the machine's self-calibration checks. When the State asked Chase for the specific results shown on Exhibit 5, Mowers objected.

¶9        Mowers argued Exhibit 5 lacked the statutorily-required certification language, making it inadmissible. *See* A.R.S. § 28-1327.B. Without Exhibit 5, Mowers argued, the State had not met the foundational requirements for admissibility of the breath-test results. *See* A.R.S. § 28-1323.A. The superior court sustained Mowers's objection but said the State

could use Exhibit 5 to refresh Chase's recollection. Without attempting to refresh Chase's recollection, the State asked him for the results of Mowers's breath test and he answered.

¶10        After the superior court excused the jury for the day, Mowers renewed her objection to Chase's testimony about the breath-test results. Specifically, she argued the exclusion of Exhibit 5 meant the State had no proof the machine used in her test was operating correctly and "it was improper for [Chase] to talk about the results before all of [the foundational requirements] have been met." Further, "because the results have been improperly admitted," Mowers moved for a mistrial.

¶11        The superior court denied the motion, specifically finding "the State has met the requirements of 28-1323 for the purpose of the testimony regarding the results all the way, 1 through 5." The superior court went on to say Chase could testify to the breath-test results but, unless the State provided "the appropriate certification under [§ 28-]1327," Exhibit 5 would "not be sent to the jury." The State never provided the certification.

¶12        The following day, the State called Donald Stenberg, a toxicologist with the Phoenix Crime Lab. Stenberg said the crime lab is responsible for maintaining the Intoxilyzer 8000 machines. When asked how often the machines are checked, he said "There's -- I believe I said it's a 30- to 31-day check. So if it's not checked every 31 days, the instrument will lock out. There's also a 90-day check that's supposed to be done on it as well." Later, when asked about the Intoxilyzer 8000's calibration and potential margin of error, Stenberg responded "That's something that you'd have to ask the people who calibrate the instrument. That's not me." Stenberg never discussed the maintenance or calibration of the specific Intoxilyzer 8000 used to test Mowers.

¶13        At the conclusion of the State's case-in-chief, Mowers moved for acquittal under Rule 20 of the Arizona Rules of Criminal Procedure. The superior court denied the motion, and the jury found Mowers guilty on both counts. Mowers then filed a renewed Rule 20 motion. Following arguments, the superior court again denied Mowers's motion. The superior court sentenced Mowers to concurrent four-month terms of imprisonment for each count, with one-day presentence incarceration credit, and two-years' supervised probation following her release from prison.

¶14        Mowers timely appealed. This court has jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 13-4031 and -4033.A.1.

## ANALYSIS

**I.** **The State failed to prove an essential element of each charge against Mowers.**

¶15 Count 1 against Mowers required the State to prove, beyond a reasonable doubt, she was: (1) driving a vehicle; while (2) under the influence of intoxicating liquor, and (3) impaired to the slightest degree; (4) her driver's license was suspended or revoked at the time of driving; and (5) she knew, or should have known, her license was suspended or revoked at the time. *See* A.R.S. §§ 28-1381.A.1 ("impaired to the slightest degree"); -1383.A.1 (license is "suspended, canceled, revoked or refused"); *State v. Williams*, 144 Ariz. 487, 489 (1985) (driving without license requires culpable mental state).

¶16 Similarly, count 2 required the State to prove, beyond a reasonable doubt, Mowers was: (1) driving a vehicle; (2) had a BAC of 0.08 or more within two hours of driving; (3) her BAC resulted from drinking alcohol before, or while, driving; (4) her driver's license was suspended or revoked at the time of driving; and (5) she knew, or should have known, her license was suspended or revoked at the time. *See* A.R.S. §§ 28-1381.A.2 ("alcohol concentration of 0.08 or more within two hours of driving"); -1383.A.1; *Williams*, 144 Ariz. at 489.

¶17 At trial, the State sought to prove the second and third elements of each charge by introducing Mowers's breath-test results. The State then called Stenberg, the crime-lab toxicologist, who testified "all persons regardless of tolerance are impaired to operate a motor vehicle at a .08 [BAC]." Stenberg also performed a "retrograde extrapolation," using Mowers's breath-test results, to determine what her BAC was within two hours of the collision.

¶18 This court analyzes the statutory requirements *de novo* but reviews the facts established at trial in the light most favorable to sustaining the verdict. *See State v. Cope*, 241 Ariz. 323, 324, ¶ 5 (App. 2016); *State v. Felix*, 237 Ariz. 280, 283, ¶ 2 (App. 2015).

**A.** **The superior court abused its discretion when it allowed Chase to testify about the results of Mowers's alcohol-breath test.**

¶19 Mowers argues the superior court abused its discretion by allowing Chase to testify about her breath-test results when the State had not met subsection 28-1323.A's foundational requirements. A superior

court abuses its discretion when its reasoning is legally incorrect, clearly untenable, or otherwise constitutes a denial of justice. *See State v. Penney*, 229 Ariz. 32, 34, ¶ 8 (App. 2012). Specifically, Mowers argues the superior court erred in admitting the test results because State failed to establish the Intoxilyzer 8000 "used to conduct [her] test was in proper operating condition." *See* A.R.S. § 28-1323.A.5. We agree.

**¶20** "A proponent of a breath test . . . can offer the test into evidence by utilizing either the statutory method, established in section 28–[1323] or the rules of evidence method, governed primarily by Rule 702, Arizona Rules of Evidence." *See State ex rel. McDougall v. Johnson*, 181 Ariz. 404, 407 (App. 1994) (citing the predecessor statute to § 28-1323). When a party seeks to admit breath-test results "without testimony from an expert witness, *the requirements of the statute must be scrupulously met* so that there will be a uniform, statewide basis of testing to vouch for accuracy and reliability." *See id.* at 408 (emphasis original) (quotation omitted).

**¶21** Subsection 28-1323.A lists five foundational elements for the admission of breath-test results. Mowers admits the State satisfied the first four requirements. Her argument centers on the fifth, which requires the proponent to establish:

> *The device used to conduct the test was in proper operating condition*. Records of periodic maintenance that show that the device was in proper operating condition are admissible in any proceeding as prima facie evidence that the device was in proper operating condition at the time of the test. *Calibration checks with a standard alcohol concentration solution bracketing each person's duplicate breath test are one type of records of periodic maintenance that satisfies the requirements of this section.* The records are public records.

A.R.S. § 28-1323.A.5 (emphasis added). The State argues it laid proper foundation for the fifth requirement based on the calibration checks provision. *See id.*

**¶22** To satisfy subsection 28-1323.A.5, the State sought to admit Exhibit 5, which shows "each individual subject test . . . bracketed by calibration checks and error blanks." Yet Exhibit 5 was not admitted. And though the superior court said Chase could "testify as to what [Exhibit 5] is if it supports and reflects his recollection of the test and whatever he put in his report," Chase gave no such testimony. Rather, following discussion of

Mowers's objection, the State simply asked Chase "what were the results [of Mowers's breath test]?"

¶23 On appeal, the State argues "Chase *would have* laid foundation for Exhibit 5 under the rules of evidence." (Emphasis added). According to the State, because Chase "possessed the knowledge to testify that Exhibit 5 was what the State claimed it to be," the superior court should have allowed Exhibit 5 into evidence. *See* Ariz. R. Evid. 901(b)(1). Yet the State failed to preserve this objection below and did not file a cross-appeal. Accordingly, this argument is not properly before us and cannot be considered. *See State v. Dawson*, 164 Ariz. 278, 282 (1990) ("the [S]tate's failure to timely appeal or cross-appeal acts as a jurisdictional bar to its raising the error in defendant's appeal").

¶24 To be sure, Chase did testify in general terms about the self-calibration process the Intoxilyzer 8000 completes with each examination. Yet he never said whether the specific machine used to test Mowers successfully completed that process or whether the machine displayed a successful completion message after he tested Mowers. Further, on cross-examination Chase was unable to say how frequently the machine underwent "periodic maintenance," going on to disclaim *any* involvement "in the maintenance of that instrument." Stenberg, the State's toxicology witness, was equally unhelpful. He too spoke in general terms of Intoxilyzer 8000 maintenance but denied involvement in the specific machine's calibration. *Cf. State v. White*, 155 Ariz. 452, 457–58 (App. 1987) (admitting breath-test results after officer "testified that he conducted calibration checks on the machine").

¶25 Put simply, the State presented no records or testimony to establish the Intoxilyzer 8000 used to test Mowers "was in proper operating condition." *See* A.R.S. § 28-1323.A.5. Allowing Chase to testify about Mowers's breath-test results, therefore, was an abuse of discretion.

**B.     The superior court's error was not harmless.**

¶26 This court reviews improperly admitted evidence for harmless error. *See State v. Bolton*, 182 Ariz. 290, 303 (1995). Under harmless error, the question "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) (emphasis original). "The State has the burden of convincing us that any error was harmless." *State v. Anthony*, 218 Ariz. 439, 446, ¶ 39 (2008).

¶27 Here, the State failed to meet its burden. Chase's "testimony [regarding the breath-test results] was highly incriminating, had a clear bearing on the charges against [Mowers], and likely affected the verdict." *See State v. Bass*, 198 Ariz. 571, 581, ¶ 44 (2000). As to the count 2, test results are required to prove an element of the offense. *See* A.R.S. § 28-1381.A.2. Without the results, a jury could not convict Mowers.

¶28 As to count 1, the State only needed to show Mowers was impaired to the slightest degree. *See* A.R.S. § 28-1381.A.1. Admission of the test results, standing alone, may have constituted harmless error but for the State's use of them to prove impairment. The State repeatedly referred to the breath-test results "throughout trial, and in the State's closing argument, the prosecutor referred to the [breath-test results] at least [twelve] times." *See State v. Bronson*, 204 Ariz. 321, 327, ¶ 33 (App. 2003). The State drew a clear connection between the breath-test results and Mowers's potential impairment, telling the jury "she was impaired to the slightest degree at the time of driving *by virtue of being over a .08* as you heard by -- heard from Donald Stenberg." (Emphasis added).

¶29 In short, because we cannot sever the impact of the breath-test results on the jury, we are not "satisfied beyond a reasonable doubt that the error did not impact the verdict." *See Bass*, 198 Ariz. at 580, ¶ 39. We must, therefore, vacate both convictions.

## II. The superior court did not abuse its discretion when it allowed Mazich to testify about Mowers's incriminating statements.

¶30 Mowers also argues the superior court erred when it allowed Mazich to testify that Mowers admitted to driving at the time of the accident, to consuming four beers before driving, and knowing her driving privileges had been revoked. Mowers specifically argues the State failed to present sufficient evidence beyond her own words as required by the *corpus delicti* doctrine. Because the improper admission of evidence at trial is dispositive, we need not address her *corpus delicti* argument. We choose, however, to address it to avoid confusion on remand. *See Nayeri v. Mohave County*, 247 Ariz. 490, 494, ¶ 15 (App. 2019).

¶31 "The *corpus delicti* doctrine ensures that a defendant's conviction is not based upon an uncorroborated confession or incriminating statement." *State v. Morris*, 215 Ariz. 324, 333, ¶ 34 (2007) (italics added). The doctrine "requires that, as a condition of the admissibility of a defendant's incriminating statements, the State present evidence independent of the statements sufficient to raise a reasonable inference" the

crime charged actually occurred. *See State v. Barragan-Sierra*, 219 Ariz. 276, 281, ¶ 12 (App. 2008). Under this doctrine, "[o]nly a reasonable inference of the *corpus delicti* need exist before a confession may be considered, and circumstantial evidence suffices to support the inference." *See State v. Carlson*, 237 Ariz. 381, 387, ¶ 8 (2015) (quotation omitted). Here, the State met its burden.

**¶32** Mowers's first statement, explaining she was driving and how the collision occurred, was corroborated by the physical evidence and the explanation of the accident by D.M., the second driver. As the State rightly notes, "To the extent that a factual question existed on whether Mowers or [B.S.] had driven the car, it was not an issue of *corpus delicti* but a factual issue to be decided by the jury." Mowers second statement, that she "had four beers," was corroborated by the smell of alcohol noted by Mazich, Bohatir, and Chase. Finally, the suspension of her driving privileges was supported by the absence of any driver's license in Arizona, her having a non-operator identification, and the testifying officer's understanding her privileges had been revoked several times in Illinois.

**¶33** Aside from Mowers's confession, the foregoing constitutes independent corroborating evidence the crimes charged occurred. *See Barragan-Sierra*, 219 Ariz. at 281, ¶ 12. The superior court, therefore, did not abuse its discretion in admitting Mowers's incriminating statements.

## CONCLUSION

**¶34** For the reasons stated above, we vacate Mowers's convictions and sentences and remand the matter to the superior court for further proceedings consistent with this decision.

