WE ARE AMERICA/SOMOS AMERICA, COALITION OF ARIZONA, et al., Plaintiffs,

v.

MARICOPA COUNTY BOARD OF SUPERVISORS, et al., Defendants.

No. CIV–06–2816–PHX–RCB.

United States District Court, D. Arizona.

Jan. 13, 2009.

Antonio D. Bustamante, Law Office of Antonio D. Bustamante PC, Danilo Ballecer, Ballecer & Segal LLP, H. Michael Clyde, Perkins Coie Brown & Bain PA, Phoenix, AZ, Carlos Holguin, Peter Anthony Schey, Los Angeles, CA, Ray Velarde, Law Office of Ray Velarde, El Paso, TX, for Plaintiffs.

Dennis Ira Wilenchik, Wilenchik & Bartness PC, Timothy James Casey, Schmitt Schneck Smyth & Herrod PC, Sally Wolfgang Wells, Maricopa County Attorneys Office, Phoenix, AZ, for Defendants.

## ORDER

ROBERT C. BROOMFIELD, Senior District Judge.

The court assumes familiarity with the prior proceedings in this action, which is challenging defendants' policy of prosecuting individual undocumented immigrants for conspiring to smuggle themselves in violation of Ariz.Rev.Stat. § 13–2319.[1] In *We Are America/Somos America Coalition of Arizona v. Maricopa County Board of Supervisors,* 2007 WL 2775134 (D.Ariz. Sept. 21, 2007), the court left open the possibility that it would decline to exercise its jurisdiction based upon *Younger* abstention. At that time, as the parties are well aware, the court's primary concern was the requirement under *Younger* that the state proceedings implicate important state interests. In *We Are America* the court could not definitively resolve that issue because the parties did not consider the possibility of field preemption. Therefore, the court allowed supplemental briefing on that issue.

After the filing of those briefs, defendants advised the court of *State v. Barragan–Sierra,* 219 Ariz. 276, 196 P.3d 879 (Ct.App.2008). In part because defendants deemed that decision "apropos" to the remaining field preemption issue, Not. (doc. 50) at 2, the court allowed plaintiffs to file a further supplemental brief limited to the "impact, if any," of *Barragan–Sierra* upon that issue. Doc. 51 at 4.

In the meantime, plaintiffs filed an amended complaint ("FAC") (doc. 45), which, as will be seen, necessitates revisiting the issue of whether this action will

---

1. As the plaintiffs do, hereafter the court will refer to that policy as the Maricopa Migrant Conspiracy Policy ("MMCP") or simply "the policy."

interfere with ongoing state judicial proceedings—another requirement for *Younger* abstention. *See Chandler v. State Bar of California,* 2008 WL 901865, at *3 (N.D.Cal. March 31, 2008) (quoting *Canatella v. California,* 304 F.3d 843, 850 (9th Cir.2002)) ("The *Younger* inquiry 'is triggered only when the threshold for *Younger* abstention is present—that is, when the relief sought in federal court would in some manner directly interfere with ongoing state proceedings.' ") Additionally, despite the fact that the parties did not address it, the court must also consider *Younger's* potential applicability to the taxpayer and community organization plaintiffs who are not parties to any state proceedings.

### *Background*

Focusing on the Mexican national plaintiffs who had been arrested, charged and detained for conspiracy to violate A.R.S. § 13–2319, and the putative class similarly defined, in *We Are America* this court expressly found that "[a]s *currently pled,* the relief sought by Plaintiffs will necessarily interfere with prosecutions already underway at the time this action was filed." *We Are America,* 2007 WL 2775134, at *3 (emphasis added). In so holding, the court pointed out that "[i]t [wa]s evident from the complaint that at least six of the individual plaintiffs had been charged with violation of Ariz.Rev. Stat. § 13–2319 prior to the initiation of this action." *Id.* (citing Compl. (Doc. # 1) ¶¶ 9–10). The court also stressed that "the prospective class that Plaintiffs seek to have certified includes '[a]ll individuals stopped, detained, arrested, incarcerated, *prosecuted,* or penalized for conspiring to transport themselves, and themselves only, in violation of Ariz.Rev.Stat. § 13–2319.' " *Id.* (quoting Compl. (doc. # 1) ¶ 25) (emphasis added by court). The court gave no credence to plaintiffs' argument that it

"could fashion . . . relief in such a way that would not require enjoining any currently pending criminal cases," because "[p]laintiffs made no such distinction in their complaint." *Id.* (citations omitted). To reinforce that point, quoting directly from the complaint, the court noted the allegation that " '[i]f the relief prayed for is not granted, plaintiffs . . . will continue to be . . . prosecuted pursuant to an unconstitutional and unlawful policy.' " *Id.* (quoting Compl. (doc. # 1) ¶ 55).

Shortly after the issuance of *We Are America,* plaintiffs filed their FAC. The purpose of that complaint, in plaintiffs' words, is to "make clear that they seek no relief that would interfere with state proceedings filed before this action." Pl. Supp. (doc. 52) at 5 n. 5 (citation omitted). To that end, in pleading "irreparable injury" in their FAC plaintiffs added the following language: "Plaintiffs do not, . . ., seek to enjoin or interfere with state proceedings that were underway before initiation of this case or otherwise would require abstention under *Younger* [.]" FAC (doc. 45) at 25, ¶ 51. Plaintiffs similarly amended their prayer for relief. In particular, they now claim to be seeking declaratory relief "[o]nly to the extent [such] relief does not interfere with state proceedings that were underway before initiation of this case or otherwise require abstention under *Younger* [.]" *Id.* at 28, ¶ 3. Further, in seeking injunctive relief "restraining defendants . . . from *further* implementing the [policy]," again, plaintiffs explicitly allege that they are seeking such relief, "but *only* to the extent [it] does not interfere with state proceedings that were underway before initiation of this case or otherwise require abstention under *Younger* [.]" *Id.* at 29, ¶ 4 (emphasis added).

In their supplemental memorandum directed to field preemption, almost as an afterthought, plaintiffs took the position

that because their FAC does not seek "relief that would interfere with state proceedings filed before this action[,]" the "threshold condition for *Younger* abstention no longer exists, and this action should go forward regardless of whether preemption is readily apparent[.]" Pl. Supp. (doc. 52) at 5, n. 5. In other words, plaintiffs reason that given the FAC, the interference aspect of *Younger* abstention is no longer present here. Accordingly, there is no need for the court to even reach the issue of field preemption. Given this recently espoused position by plaintiffs, the court ordered defendants to file a response "limited to the issues of (1) whether there is an ongoing state-initiated proceeding; and (2) whether this federal court action would enjoin the [state-initiated] proceeding or have the practical effect of doing so, i.e., would interfere with the proceeding in a way that *Younger* disapproves[,] so as to mandate abstention under *Younger*." Doc. 53 at 2:10–14 (internal quotation marks and citation omitted).

On November 20, 2008, defendants timely filed their response. As to the first inquiry, defendants simply responded: "Yes." Def. Supp. (doc. 54) at 2:7. Defendants also responded affirmatively to the second inquiry. Offering no details, defendants contend that allowing this federal action to proceed "would at worst enjoin, and at best interfere with, on-going state initiated proceedings in a way that *Younger* disapproves." *Id.* at 2. Defendants further baldly assert that "the relief sought ... will necessarily interfere with the continuous stream of on-going state law enforcement and state proceedings for the putative class members." *Id.* at 2(citation omitted). Moreover, plaintiffs' request, as defendants put it, that the court "creatively fashion[ ]" relief in such a way that " 'otherwise [would not] require abstention under *Younger* [,]' " is "simply not

tenable[,]" from defendants' standpoint. *Id.* (quoting FAC at 28, ¶ 3). Finally, defendants accurately note that there are no procedural barriers in the pending state court proceedings to raising any constitutional challenges the "putative class members" may have to defendants' policy. *Id.* Hence, defendants adhere to the view that *Younger* abstention is proper in this case.

### *Discussion*

### *I. Younger Abstention*

The Ninth Circuit has recognized the mandatory nature of *Younger* abstention such that "[d]istrict courts applying *Younger* must exercise jurisdiction except when specific legal standards are met, and may not exercise jurisdiction when those standards are met; there is *no discretion* vested in the district courts to do otherwise." *Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir.2005) (internal quotation marks and citation omitted) (emphasis added). As to the latter situation, the Ninth Circuit has repeatedly held that a "court *must* abstain under *Younger* if four requirements are met: (1) a state initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issue in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that *Younger* disapproves." *San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir.2008) (citations omitted) (emphasis added). The court will address these facts in light of the parties supplemental briefs and the filing of the FAC.

### *A. Ongoing State Initiated Proceeding*

As this court stated in *We Are America*, "[t]he critical question for purposes of

*Younger* abstention is 'whether the state proceedings were underway before initiation of the federal proceedings.'" *We Are America,* 2007 WL 2775134, at *3 (quoting *Kitchens v. Bowen,* 825 F.2d 1337, 1341 (9th Cir.1987)). "[A] 'charge' is generally a formal allegation of wrongdoing that initiates legal proceedings against an alleged wrongdoer." *Federal Exp. Corp. v. Holowecki,* —— U.S. ——, 128 S.Ct. 1147, 1161, 170 L.Ed.2d 10 (2008) (Thomas, J., dissenting). "In criminal law, ... a charge is defined as '[a] formal accusation of an offense as a preliminary step to prosecution.'" *Id.* (quoting Black's Law Dictionary 248 (8th ed. 2004)). Other "events" also may serve to "initiate adversary criminal proceeding[s][,]" such as "preliminary hearing[s], indictment[s], information[s], and arraignment[s]." *Rothgery v. Gillespie County, Tex.,* —— U.S. ——, 128 S.Ct. 2578, 2599, 171 L.Ed.2d 366 (2008) (Thomas, J., dissenting).

Here, insofar as the six Mexican national plaintiffs are concerned, it is uncontested that state proceedings were underway before the commencement of this federal action. On November 21, 2006, plaintiffs filed the complaint herein. Roughly three months earlier, however, as the FAC alleges, "in mid-August 2006, defendants arrested, detained and charged" four of the Mexican national plaintiffs "with conspiracy to violate Ariz.Rev.Stat. § 13–2319." FAC (doc. 45) at 7, ¶ 9. Prior to that, "in late May 2006," defendants also allegedly "arrested, detained, and charged" the other two Mexican national plaintiffs "with conspiracy to violate" that same statute. *Id.* at 7, ¶ 10. Obviously those actions constituted the initiation of state criminal proceedings against the six Mexican national plaintiffs—proceedings which were underway before the initiation of this federal action.

## B. Plaintiffs Not Parties to State Proceedings

What the parties seemingly fail to take into account is that the six Mexican nationals are not the only plaintiffs in this action. The FAC also names as plaintiffs five individual taxpayers, as well as four community based organizations (collectively referred to herein as the "non-state party plaintiffs"). No state court proceedings have been instituted, much less are pending, against any of those plaintiffs however-er.

■ "As a general proposition, abstention is mandated under *Younger* only when the federal plaintiff is actually a party to the state proceeding; the doctrine does not bar non-parties from raising constitutional claims in federal court, even if the same claims are being addressed in a concurrent state proceeding involving similarly situated parties." *Blackwelder v. Safnauer,* 689 F.Supp. 106, 119 (N.D.N.Y. 1988), *aff'd on question of mootness,* 866 F.2d 548 (2d Cir.1989) (citing, *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 928–29, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648 (1975)). In other words, as the Ninth Circuit put it, "the state defendant's inability to bring a federal action because of a pending state prosecution does not affect other potential federal plaintiffs who are not themselves the subject of pending prosecutions." *Ripplinger v. Collins,* 868 F.2d 1043, 1049 n. 5 (9th Cir.1989) (citing *Doran,* 422 U.S. at 928–930, 95 S.Ct. at 2566–67). In light of the foregoing, on the face of it, application of *Younger* is problematic as to the non-state party plaintiffs herein.

In *Doran,* one of the three plaintiffs was the subject of a related state criminal prosecution, but the other two were not, forcing the Supreme Court to confront the issue of under what circumstances federal plaintiffs should be considered the same for *Younger* purposes. The plaintiffs in

*Doran* were three separate corporations, which operated topless bars in the same town. All three were represented by the same counsel and together filed a federal court action challenging the constitutionality of a town ordinance prohibiting topless dancing. Two of the operators abided by that ordinance until after the district court enjoined enforcement of the ordinance. In the meantime though, prior to the issuance of that preliminary injunction, one bar operator resumed the presentation of topless dancing. As a result, the state issued criminal summonses against the operator and its dancers. Following the town's appeal, the Second Circuit affirmed the granting of the preliminary injunction as to all three plaintiffs.

Explicitly rejecting the view "that all three plaintiffs should automatically be thrown into the same hopper for *Younger* purposes," the Supreme Court held, *inter alia*, that *Younger* barred injunctive relief as to the plaintiff operator who was involved in the state criminal prosecution. *Doran*, 422 U.S. at 928, 95 S.Ct. at 2566. *Younger* did not, however, bar injunctive relief as to the other two plaintiffs because "[n]o state proceedings were pending against either [of them] at the time the District Court issued its preliminary injunction." *Id.* at 930, 95 S.Ct. at 2567. In so holding, the Court did recognize that "there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the Younger considerations which govern any one of them[.]" *Id.* at 928, 95 S.Ct. at 2566; *see also Hicks v. Miranda*, 422 U.S. 332, 348–50, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) (err not to dismiss based upon *Younger* where federal plain-

tiffs were later subject to state criminal prosecution because their interests were "intertwined with state criminal defendants, same lawyer represented both, and federal action "sought to interfere with the pending state prosecutions," and federal plaintiffs did not show that they could not obtain relief or raise constitutional claims in state proceedings). Despite common legal counsel and "similar business activities and problems," the Supreme Court found that the *Doran* plaintiffs were not so "closely related," however, because "they [we]re apparently unrelated in terms of ownership, control and management." *Doran*, 422 U.S. at 929, 95 S.Ct. at 2566.

From the Ninth Circuit's standpoint, *Doran* "clarified that when the federal plaintiff is not a party to the state court action, a mere commonality of interest with a party to the state litigation is not sufficient to justify abstention." *Green v. City of Tucson*, 255 F.3d 1086, 1100 (9th Cir.2001) (*en banc*), *overruled, in part, on other grounds by Gilbertson v. Albright*, 381 F.3d 965 (9th Cir.2004) (*en banc*). Further, when *Hicks* and *Doran* are read together, they demonstrate "the quite limited circumstances under which *Younger* may oust a district court of jurisdiction over a case where the plaintiff is not a party to an ongoing state proceeding[.]" *Id.* "Congruence of interests is not enough, nor is identity of counsel, but a party whose interest is so intertwined with those of the state court party that direct interference [2] with the state court proceeding is inevitable may, under *Younger*, not proceed." *Id.* (footnote added).

■ After careful consideration, the court finds that although the taxpayer and

---

**2.** "*Gilbertson* did overrule *Green's* holding that direct interference is a threshold requirement ... of *Younger* abstention, but it left intact the more general requirement that *some* interference with state court proceed-

ings is a necessary ... element of the *Younger* doctrine." *San Jose Silicon Valley*, 546 F.3d at 1096 n. 4 (internal quotation marks and citation omitted) (first ellipsis in original).

organizational plaintiffs are not parties to the state proceedings, their interests are sufficiently intertwined with those of the Mexican national plaintiffs, who are parties in state court, so that they should be "subject to the *Younger* considerations which may govern any one of them[.]" *See Doran*, 422 U.S. at 928, 95 S.Ct. at 2566. Several factors inform the court's analysis. First, "it would be [practically] impossible for this court to address" the claims of the taxpayer and organizational plaintiffs "without resolving issues at the heart of the ... state proceeding[s]"—*see Hindu Temple Society of North America v. Supreme Court of State of New York*, 335 F.Supp.2d 369, 376 (E.D.N.Y.2004), *aff'd without pub'd opinion*, 142 Fed.Appx. 492 (2d Cir.2005)—the constitutionality of the MMCP and whether it "actually conflicts with the federal government's regulation of international migration[.]" *See* FAC (doc. 45) at 29, ¶ 3(b). Second, there is no suggestion that the Mexican nationals "would fail to adequately represent [the] interests [of the remaining plaintiffs] in the state ... proceeding[.]" *See Spargo v. N.Y. State Com'n, Judicial Conduct*, 351 F.3d 65, 85 (2d Cir.2003). Moreover, if any of those prosecutions are appealed, nothing precludes the non-Mexican national plaintiffs from seeking to appear as *amici curiae* in accordance with 17 A.R.S. Rules Crim. Proc., Rule 31.25 (West Supp.2008); *see, e.g., State v. Delk*, 153 Ariz. 70, 734 P.2d 612 (App.1986) (allowing City of Phoenix to file an *amicus curiae* brief on the issue of whether Arizona's "anti-plea bargain" provision violated the Arizona Constitution). Thus, the court agrees with Judge Dearie's rationale in *Hindu Temple* that "without more, ... conjecture" that the non-Mexican national "plaintiffs could not have intervened [at some point] in the state proceeding is insufficient to sidestep *Younger*." *See Hindu Temple*, 335 F.Supp.2d at 377. Third, and perhaps

most significantly, as discussed below, the declaratory and injunctive relief which plaintiffs are seeking would "interfere" in the state proceedings because it would "enjoin ... or otherwise involve th[is] federal court[ ] in terminating or truncating" state proceedings. *See San Jose Silicon Valley*, 546 F.3d at 1096 (internal quotation marks and citation omitted). Thus, although the court is fully cognizant that "*Younger* should be applied sparingly and cautiously to federal plaintiffs not parties to an ongoing state action[,]" if the other *Younger* requirements are met here, the court finds that "this is one of those limited circumstances where it must abstain ..., despite the presence of plaintiffs not parties to the state action." *See Hindu Temple*, 335 F.Supp.2d at 377 (citing *Green*, 255 F.3d 1086).

### C. Implication of Important State Interests

 At last the court is free to return to the unanswered issue in *We Are America*—whether plaintiffs can show field preemption under the second *DeCanas* test. Plaintiffs have consistently taken the position that federal immigration law preempts the MMCP and thus, necessarily, that policy does not implicate an important state interest. From defendants' perspective neither the MMCP nor A.R.S. § 13–2319 "intrude on, burden, or conflict with federal [immigration] law[;]" hence plaintiffs cannot meet their burden of establishing preemption here.

As this court previously framed it, "the decisive inquiry" in terms of field preemption "is whether Congress intended to occupy the field of regulating criminal activities involving the smuggling of aliens." *We Are America*, 2007 WL 2775134, at *6. Of the three ways in which Congressional "intent to occupy a given field to the exclu-

sion of state law[ ]" can be shown,[3] plaintiffs are relying only upon the third—"where the object sought to be obtained by the federal law and the character of obligations imposed by it ... reveal the same purpose." *Id.* (internal quotation marks and citation omitted). *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988) (internal quotation marks and citation omitted). Plaintiffs contend that the MMCP "impermissibly duplicates" federal immigration law in "object and effect[.]" Pl. Supp. (doc. 44) at 1. From plaintiffs' viewpoint, that duplication stems from the fact that the MMCP attempts to regulate "two types of conduct that the federal government has already prohibited as part of a comprehensive federal scheme: immigrant transportation for gain and unauthorized entry into the United States." *Id.* Defendants concede that A.R.S. § 13–2319 and the MMCP "may harmoniously duplicate" certain provisions of the Immigration and Nationality Act ("INA"), but they argue that such harmonious duplication is not sufficient to meet plaintiffs' burden of proving implied preemption. Def. Supp. (doc. 47) at 2.

■ Before addressing the merits, it is necessary to consider defendants' contention that "state law is presumed not to be preempted[.]" *Id.* at 3. To be sure, "[w]hen Congress legislates in a field which the States have traditionally occupied ... [courts] start with the assumption that the historic police powers of the State were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Chicanos Por La Causa, Inc. v. Napolitano*, 544 F.3d 976, 983 (9th Cir.2008) (quoting, *inter alia*, *United States v. Locke*, 529 U.S. 89, 108,

120 S.Ct. 1135, 146 L.Ed.2d 69 (2000)) (other citation omitted). What defendants conveniently overlook is that the converse is also true. Courts "do *not* assume non-preemption 'when the State regulates in an area where there has been a history of significant federal presence.'" *Id.* (quoting *Locke*, 529 U.S. at 108, 120 S.Ct. 1135) (emphasis added). Clearly immigration is an area in which historically there has been a significant federal presence. *See, e.g.*, *DeCanas*, 424 U.S. at 354, 96 S.Ct. 933 (citations omitted) ("Power to regulate immigration is unquestionably exclusively a federal power."); *United States v. Valenzuela–Bernal*, 458 U.S. 858, 864, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) ("The power to regulate immigration—an attribute of sovereignty essential to the preservation of any nation-has been entrusted by the Constitution to the political branches of the Federal Government."); and *Galvan v. Press*, 347 U.S. 522, 531, 74 S.Ct. 737, 98 L.Ed. 911 (1954) ("that the formulation of [immigration policies] is entrusted exclusively to Congress has become about as firmly imbedded in the legislative and judicial tissues of our body politic as any aspect of our government"). Thus, despite defendants' contrary suggestion, they cannot avail themselves of the "presumption against preemption[.]" *See Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1004 (9th Cir.2008). Even without the benefit of that presumption, however, for the reasons set forth below, the court agrees with defendants that plaintiffs' preemption argument is unavailing.

■ First, plaintiffs offer no legal authority to support the broad proposition that simply because a state statute or policy may be duplicative of federal law, it is necessarily preempted. Indeed, in making

---

3. The other two ways are "where the pervasiveness of the federal regulation precludes supplementation by the States," and "where

the federal interest in the field is sufficiently dominant[.]" *Schneidewind*, 485 U.S. at 300, 108 S.Ct. at 1150.

that argument plaintiffs disregard the *De Canas* Court's finding that there was no "specific indication in either the wording or the legislative history of the INA ... that Congress intended to preclude even *harmonious* state regulation touching on aliens in general[.]" *De Canas,* 424 U.S. at 358, 96 S.Ct. at 937–38 (footnote omitted) (emphasis added). Moreover, plaintiffs are not claiming that the MMCP is not harmonious with the INA—only that it is duplicative.

Second, plaintiffs also fail to take into account the demanding standard under *De Canas* to "justify th[e] conclusion[ ] ... that Congress, in enacting the INA, intended to oust state authority to regulate ... in a manner *consistent* with pertinent federal laws." *Id.* at 358, 96 S.Ct. at 937 (emphasis added). In fairly expansive language, the *De Canas* Court held that "[o]nly a demonstration that *complete ouster* of state power including state power to promulgate laws not in conflict with federal laws was the *clear and manifest purpose* of Congress" will establish such Congressional intent. *Id.* (emphasis added). Plaintiffs do not even come close to meeting that standard.

In that respect, the present case is remarkably similar to *Barragan–Sierra.* There, a defendant who had been convicted of conspiracy to smuggle himself in violation of A.R.S. § 13–2319 challenged his conviction on several grounds, including preemption. In addressing defendant's preemption argument in the context of the second *DeCanas* test, the Court explained that defendant did "not point[ ] to any specific indication in the INA or its history that Congress intended to preclude harmonious state regulation touching on the smuggling of illegal aliens in particular." *Barragan,* 196 P.3d at 890 (citing *DeCanas,* 424 U.S. at 358, 96 S.Ct. 933). Likewise, the Court dismissed defendant's

"reference to the limits on the role of states in enforcement of the federal immigration law[,]" finding that it had "no applicability to [A.R.S. § 13–2319], which is a state law designed to punish human smuggling for profit." *Id.* Thus, the *Barragan–Sierra* Court found that defendant did not meet his burden of showing preemption. *Id.* (citation omitted).

Plaintiffs are grasping at straws in their unsuccessful attempt to diminish the import of *Barragan–Sierra.* First, they contend that this court is not bound by that state court interpretation of federal law which, at most, has only "persuasive value." Pl. Supp. Memo. (doc. 52) at 2 (internal quotation marks and citation omitted). Second, plaintiffs believe that *Barragan–Sierra's* analysis of field preemption "is simply too cursory to persuade." *Id.* Third, plaintiffs assert that by enacting 8 U.S.C. §§ 1321–28, "Congress has enacted legislation aimed at the very issue addressed by the MMCP: the transportation of unauthorized entrants." *Id.* at 4. None of these reasons persuade this court to disregard *Barragan–Sierra,* however.

Just as in *Barragan–Sierra,* plaintiffs have not met their burden of showing, either based upon the language or the legislative history of the INA, that "Congress intended to preclude harmonious state regulation touching on the smuggling of illegal aliens in particular." *See Barragan–Sierra,* 196 P.3d at 890 (citing *DeCanas,* 424 U.S. at 358, 96 S.Ct. 933). Given that "[t]he central concern of the INA is with the terms and conditions of admission to the country and the subsequent treatment of aliens *lawfully* in the country[,]" plaintiffs' inability to meet that burden of proof is not surprising. *See DeCanas,* 424 U.S. at 359, 96 S.Ct. 933 (emphasis added).

In addition to arguing impermissible duplication, relying upon three supposedly factually "similar" cases where "[c]ourts

[h]ave [f]ound [f]ield [p]reemption[,]" plaintiffs urge this court to also find field preemption. *See* Pl. Supp. (doc. 44) at 4. Those cases are each readily distinguishable, however, and thus do nothing to advance plaintiffs' field preemption argument in this case.

The court in *League of United Latin American Citizens v. Wilson,* 997 F.Supp. 1244 (C.D.Cal.1997) ("*LULAC II*") did hold that Congress occupied the field of regulating post-secondary education benefits to aliens by enacting, *inter alia,* the Personal Responsibility and Work Opportunity Reconciliation Act ("PRA"). The court in *LULAC II* further held that that federal legislation preempted a California initiative, which included a provision denying public post-secondary education benefits to illegal aliens. Critical to the court's finding of field preemption in *LULAC II* was the language of the PRA. By "careful[ly] designati[ng] ... the limited instances in which states have the right to determine alien eligibility for state or local public benefits[,]" the court found that Congress "manifest[ed]" its "intention to displace state power in the area of regulation of public benefits to immigrants[.]" *Id.* at 1255.

Here, plaintiffs assert that "the INA, like the MMCP, makes it unlawful to 'transport[ ], or move[ ] or attempt[ ] to transport or move' undocumented immigrants." Pl. Supp. (doc. 44) at 2 (quoting 8 U.S.C. § 1324(a)(1)(A)(ii)) (footnote omitted). Plaintiffs further assert that the "purpose" of the INA "is to prohibit 'transport[ation] [of] an undocumented alien to any place in the United States.'" *Id.* (quoting H.R.Rep. No. 990682 at 66 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5649, 5670). These general statements are not, however, similar to the statute at issue in *LULAC II,* the PRA, which "define[d] the full scope of permissible state legislation in

the area of regulation of government benefits and services to aliens." *LULAC II,* 997 F.Supp. at 1255. Thus, in contrast to *LULAC II,* plaintiffs have not pointed to any specific language either in the INA itself or the legislative history thereto manifesting a Congressional intent to "displace state power" in the area of smuggling illegal aliens.

Plaintiffs' reliance upon *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941), is similarly misplaced. There, Pennsylvania enacted an alien registration statute which was "identical" to a federal alien registration act. *Id.* at 61, 61 S.Ct. at 401. The Court held that the federal act, which "provided a standard for alien registration in a single integrated and all-embracing system[,]" preempted that Pennsylvania statute. *Id.* at 74, 61 S.Ct. at 408. The primary reason for finding preemption there was the fact that the state law was "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 68, 61 S.Ct. at 404 (footnote omitted).

In contrast, the INA is not such a "single integrated and all-embracing system" pertaining to the smuggling of aliens. Indeed, plaintiffs would be hard-pressed to make such an argument given that the MMCP, at least on the face of it, appears to fill the interstices of the INA. The MMCP fills those interstices by allowing for the prosecution of individual undocumented immigrants conspiring to smuggle themselves; the INA does not include a similar provision. Moreover, plaintiffs do not assert that the challenged MMCP policy is in any way an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress" as evinced in the INA. *Lozano v. City of Hazleton,* 496 F.Supp.2d 477 (M.D.Pa. 2007) is likewise distinguishable. The *Lozano* court did not address the third *Schneidewind* scenario for establishing

field preemption—" 'the object sought to be obtained by the federal law and the character of obligation imposed by it reveal the same purpose.' " *Id.* at 521 (quoting *Schneidewind,* 485 U.S. at 300, 108 S.Ct. 1145). This omission is significant because, as mentioned earlier, this third scenario is the *only* way in which the plaintiffs herein are endeavoring to show field preemption. Therefore, because *Lozano*'s discussion of duplication was in the context of conflict preemption—a form of preemption to which the plaintiffs herein do not even allude— [4] it has no bearing on the present case. In short, despite plaintiffs' assertion to the contrary, the court does not find that any of these three cases are sufficiently analogous so as to warrant a finding of field preemption here.

After *We Are America,* plaintiffs were left with field preemption as the only basis for finding that no important state interests are implicated here. Having found that plaintiffs did not meet their burden of proof on that discrete issue,[5] it stands to reason that they have not overcome the fact, as this court previously recognized, that there is "little question that a state has a vital interest in the enforcement of its criminal laws." *See We Are America,* 2007 WL 2775134, at *3 (citing *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 13, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)).

### D. Interference

"The final *Younger* requirement is that the federal suit would 'interfere' with the

ongoing state proceeding (i.e., enjoin or have the *practical effect* of enjoining the proceeding)." *See San Jose Silicon Valley,* 546 F.3d at 1095 (internal quotation marks and citation omitted) (emphasis added). "As the Supreme Court has held, 'the mere potential for conflict in the results of adjudications does not, without more, warrant staying exercise of federal jurisdiction[.]' " *AmerisourceBergen Corp. v. Roden,* 495 F.3d 1143, 1151 (9th Cir.2007) (quoting *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 816, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). Thus, "[c]oncurrent consideration, not abstention, [wa]s the solution," in *AmerisourceBergen,* where there was merely a potential for conflict between the state and federal actions if a post-judgment motion or counterclaim were filed in state court. *Id.*

Here, the interference goes far beyond the potential for conflicting results. Rather, as will be seen, the "practical effect" of granting plaintiffs the declaratory and injunctive relief which they are seeking would be to enjoin state criminal proceedings—the very conduct which *Younger* proscribes.

In their FAC, plaintiffs purport to frame the relief which they are seeking in such a way as to circumvent *Younger,* and the interference element in particular. As mentioned at the outset, in their FAC plaintiffs' prayer for relief seeks declarato-

---

**4.** The court recognizes "that the categories of preemption are not rigidly distinct." *See Crosby v. National Foreign Trade Council,* 530 U.S. 363, 372 n. 6, 120 S.Ct. 2288, 2294 n. 6, 147 L.Ed.2d 352 (2000) (internal quotation marks and citation omitted). Nonetheless, as noted above, plaintiffs do not even hint at conflict preemption, which would require a showing that it would "be impossible for a private party to comply with both state and federal law, . . ., and where under the circum-

stances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See id.* (internal quotation marks and citations omitted).

**5.** As the party asserting preemption, plaintiffs had the burden of proof. *See Jimeno v. Mobil Oil Corp.,* 66 F.3d 1514, 1526 n. 6 (9th Cir. 1995).

ry relief "[o]nly to the extent [that] relief does not interfere with state proceedings that were underway before initiation of this case or otherwise require abstention under *Younger* [.]" FAC (doc. 45) at ¶ 3. Likewise, plaintiffs are seeking to enjoin defendants and others "from further implementing the [MMCP], but only to the extent such injunctive relief does not interfere with state proceedings that were underway before initiation of this case or otherwise require abstention under *Younger* [.]" *Id.* at 29, ¶ 4. Plaintiffs do not suggest how this could be accomplished though.

The court concurs with defendants' observation that "[t]here is simply no meaningful or legal way in which plaintiffs can bring their proposed class action lawsuit, which seeks injunctive [and declaratory] relief against state law enforcement activities and ongoing state judicial proceedings, without obtaining some form of relief which necessarily interferes with some aspect of the ongoing state judicial proceedings against the putative class members." Resp. (doc. 49) at 2. The court also finds persuasive defendants' argument that "plaintiffs' 'carve-out' exceptions for ongoing state proceedings existing before the date of the [FAC] are artificial and illusory ... because A.R.S. § 13–2319 and defendants' policies are enforced daily." *Id.* This is all the more so given that just last month defendants reiterated that "[p]utative class members of this federal ... action *currently* are involved in ongoing state initiated judicial proceedings." Def. Supp. Authority (doc. 54) at 2:14–15 (emphasis added). Thus, the court finds, as defendants point out, that "the relief sought by plaintiffs for the putative class will necessarily interfere with the continuous stream of on-going state law enforcement and state proceedings[.]" Resp. (doc. 49) at 2.

The present case is analogous to *San Jose Silicon Valley* where the Ninth Circuit recently found that the interference element of *Younger* had been met. There, local political organizations were challenging the constitutionality of a city code limiting the amount of campaign contributions. Prior to the commencement of that federal lawsuit, the plaintiffs had been publicly reprimanded and one of the defendants, the Elections Commission, decided to assess penalties against plaintiffs at a future date. Plaintiffs sought, among other things, a declaratory judgment that the statute was unconstitutional. They also sought to enjoin defendants from enforcing that code provision against them "or any others similarly situated[;]" and "from levying any civil penalty or *future* administrative sanction against [them] for alleged violations" of the code. *San Jose Silicon Valley,* 546 F.3d at 1091 (emphasis added). The court granted plaintiffs a permanent injunction "precluding them from enforcing the statute[,]" which effectively "prohibit[ed] the Elections Commission from imposing the fine against Plaintiffs." *Id.* at 1095. The Ninth Circuit held that "[t]he relief sought ... would 'interfere' with the Elections Commission's proceeding because it would enjoin ... or otherwise involve the federal courts in terminating or truncating the Elections Commission's proceeding." *Id.* at 1095–96 (internal quotation marks, citation and footnote omitted).

The same result would occur here if the court were to grant plaintiffs a judgment declaring the MMCP unconstitutional. Clearly such a declaration would terminate, or at a minimum truncate, state judicial proceedings in direct contravention of *Younger.* Therefore, try as they might, plaintiffs are unable to circumvent *Younger* through "artful" pleading. *See Carson v. Heineman,* 240 F.R.D. 456, 525 (D.Neb. 2007) ("[P]laintiffs' artful pleading and lack

of specificity should not serve to circumvent the principles of comity protected by *Younger* abstention[.]")

To conclude, because all four elements necessary for *Younger* abstention are present here, the court hereby GRANTS defendants' motion to dismiss on that basis (doc. 32). *See San Jose Silicon Valley,* 546 F.3d at 1092 (a "court must abstain under *Younger* if [the] four requirements are met").

IT IS ORDERED that defendants' motion to dismiss (doc. # 32) is GRANTED in its entirety.